**FILED**

JUN 1 6 2009

DENNIS P. IAVARONE, CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

| | | |
|---|---|---|
| SHERRI L. COULTRUP,<br>    Plaintiff, | ) <br> ) <br> ) | |
| vs. | ) <br> ) | **C O M P L A I N T**<br>(Jury Trial Demanded) |
| THE METHODIST UNIVERSITY, INC. &<br>JEFFREY A. ZIMMERMAN,<br>    Defendants. | ) <br> ) <br> ) | |

## I. INTRODUCTION

1.     This is an action filed pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. (hereinafter "Title VII"), in which plaintiff seeks injunctive relief, including reinstatement, back pay, interest, fringe benefits, compensatory and punitive damages because of the discriminatory and retaliatory acts of the defendants as more fully described herein.  This is also an action under the laws of the State of North Carolina for sex discrimination, intentional infliction of emotional distress, and assault and battery.

## II. JURISDICTION

2.     Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, this being an action arising under the statutes of the United States.

3.     On March 20, 2009, the EEOC issued plaintiff a Notice of Right to Sue with respect to her charge of discrimination based on retaliation and sex filed on May 23, 2008 and numbered 433-2008-05606.  The Notice of Right to Sue is attached hereto as Exhibit A and is incorporated herein by reference.  On March 20, 2009, the EEOC also issued plaintiff a Notice of

1

Right to Sue with respect to her charge of discrimination based on retaliation filed on October 8, 2008 and numbered 433-2008-06714. The letter is attached hereto as Exhibit B.

## III. PARTIES

4.     The plaintiff Sherri Coultrup (hereinafter "Coultrup") is an adult female and a citizen and resident of Fayetteville, Cumberland County, North Carolina. Plaintiff is a member of a protected class as defined by Title VII.

5.     Upon information and belief, The Methodist University, Inc. (hereinafter the "University"), is a North Carolina corporation, which qualified on November 1, 1956 to do business in the State of North Carolina, and has a place of business in Fayetteville, Cumberland County, North Carolina. Upon information and belief, defendant University is an employer within the meaning of Title VII, as it is engaged in interstate commerce and has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. Upon information and belief, defendant Jeffrey Zimmerman (hereinafter "Dean Zimmerman") is a citizen and resident of Cumberland County, North Carolina. Dean Zimmerman is Dean of the Reeves School of Business at the University and was Coultrup's supervisor during the occurrence of the events giving rise to this claim.

## IV. FACTS

6.     Plaintiff Coultrup began her employment with defendant University in January 2001 as a part time Adjunct Professor. In addition to teaching, the position included student advising and recruitment responsibilities. Coultrup quickly increased enrollment in the marketing program to over 100 students and the University subsequently created a new position for her in 2002: Assistant Professor of Marketing. In 2005, after receiving two different Teacher of the Year Nominations and winning a large grant, Coultrup was put on a tenured Professorship

2

track by the University. Coultrup went on to receive another Teacher of the Year Nomination, win another significant research grant, and serve on the Board of Directors of several Fayetteville businesses. Coultrup was also named Director of the Professional MBA at Pinehurst by the University. She has also completed every element of her PhD degree from Morgan State University in Baltimore, Maryland except the defense of her dissertation which is scheduled for late 2009.

7.     Coultrup's performance as a professor was in all regards satisfactory. She was never reprimanded verbally or in writing for any reason during her employment with the University. The first time she learned of the University's supposed dissatisfaction with her work performance was through a letter dated July 24, 2008 from the University's counsel informing her that her contract was not being renewed.

8.     Defendant University's July 24, 2008 letter was written after Coultrup filed an EEOC Charge of Discrimination against Methodist in May 2008.

9.     From February 2007, until January 2008, Coultrup was sexually harassed and subjected to a hostile work environment by Dean Zimmerman.

10.     As one of Coultrup's supervisors, Dean Zimmerman exercised control and authority over Coultrup and used said control and authority in an improper, discriminatory, and illegal manner as particularly described below. At all times relevant to the claims stated herein, Dean Zimmerman acted under the authority of the University and executed the will of the University.

11.     From February 2007 until January 2008, on numerous occasions, Dean Zimmerman would make inappropriate comments to Coultrup of a sexual nature. Particular comments he made to Coultrup included: "Your boobs look really good [in that top]" and "Your

3

ass looks really good in that." He also told her that "We should go away for the weekend" on more than one occasion. Dean Zimmerman would also make inappropriate suggestions that Coultrup should sleep with him. Specifically he said to Coultrup, "Everyone says we are sleeping together, we might as well."

12.     In February 2007, Coultrup met with Vice President of the University, Wenda Johnson to report the sexual harassment and discrimination. Vice President Johnson told Coultrup that there was not much she could do given that "the boys club at this school doesn't want to hear it." Nevertheless, it is presumed that Vice President Johnson subsequently spoke with Dean Zimmerman because he soon thereafter approached and intimidated Coultrup. Specifically, Dean Zimmerman told Coultrup a story about two University faculty members who were caught having an affair. He said that the woman was terminated while the man was merely told to "knock it off."

13.     While fearing for her continued employment, from February 2007 until January 2008, on numerous occasions, Dean Zimmerman would attempt to greet Coultrup with hugs and attempts to kiss her. Dean Zimmerman would routinely put his hands on Coultrup's shoulders and say "You're so tense." Another incident of inappropriate contact occurred while Coultrup was outside taking a break from work. A bit of ash from Coultrup's cigarette fell onto her blouse directly over her breast. Dean Zimmerman saw this and firmly brushed off the ash with his bare hand, making significant contact with her breast. A student witnessed this exchange and later remarked to Coultrup how strange it seemed.

14.     As part of her responsibilities as Director of the Professional MBA at Pinehurst for the University, Coultrup was required to oftentimes spend the night in a hotel in Pinehurst. Dean Zimmerman would often stay at the same hotel as Coultrup and on multiple occasions

4

attempted to enter Coultrup's room uninvited and intoxicated. Dean Zimmerman made numerous sexual advances towards Coultrup and she repeatedly had to ask him to leave her room. The close living and working arrangement abused by Dean Zimmerman became so intolerable to Coultrup that she was compelled to resign her Director's position in August 2007 and go back to teaching students on campus at the University. Nevertheless, Dean Zimmerman's inappropriate behavior and sexual harassment continued.

15.     On multiple occasions between February 2007 and January 2008, Dean Zimmerman would come by Coultrup's home uninvited and make sexual advances towards her. Coultrup would let Dean Zimmerman know the behavior was unwelcome and he would eventually leave. However, the final of such incidents occurred in January 2008 when Dean Zimmerman did not leave willingly. He arrived at Coultrup's residence in the evening uninvited and intoxicated. Dean Zimmerman was aware that Coultrup's husband, Colonel William Coultrup, was stationed overseas at the time on active military duty. Dean Zimmerman groped Coultrup but she resisted and yelled, "Hey! You're drunk, go home!" While pushing Dean Zimmerman towards the door, he resisted and Coultrup's shirt was partially removed in the struggle. The commotion awoke a female houseguest of Coultrup's who had been sleeping upstairs.

16.     After this incident in January 2008, Coultrup refused to go on any more conferences with Dean Zimmerman or be in any situation alone with him.

17.     The conduct of Dean Zimmerman towards Coultrup created an offensive and hostile working environment and constituted adverse and discriminatory treatment of Coultrup on the basis of her sex.

5

18.     Coultrup discovered that a perception had been formed in her Department that she was in fact sleeping with Dean Zimmerman. As a result, from September 2007, until February 2008, Coultrup was harassed and subjected to a hostile work environment by her Department Head, Dr. Mary Kirchner (hereinafter "Dr. Kirchner") and other coworkers.

19.     From September 2007 until February 2008, Coultrup discovered that Dr. Kirchner and secretary Ann Way, were calling Coultrup a "whore," a "thief," a "liar," and a "drunk" and saying that Coultrup was sleeping with Dean Zimmerman to further her career.

20.     Starting in November 2007, Coultrup went to Dean Zimmerman on several occasions to ask that he clarify the misconception that they were having an affair and put a stop to the harassment from the Department head and other Department employees. Dean Zimmerman took no corrective action.

21.     In January 2008, Dean Zimmerman told Coultrup that she would be denied a promotion to the Department Head of the Reeves School of Business and it would instead be going to a coworker with less seniority, merit, and knowledge. The coworker was also less available than Coultrup, commuting from Myrtle Beach, SC to Fayetteville, NC only three days a week. Based upon the University's normal practice, the position would have logically been awarded to Coultrup based on her proximity, experience, and ability.

22.     Dean Zimmerman told Coultrup that he would not protect her anymore and that she could forget about getting promoted to any awarded professorship because people were saying that Dean Zimmerman and Coultrup were sleeping together and she should just find another job. Dean Zimmerman also told Coultrup that her not being promoted had nothing to do with her ability.

6

23. In February 2008, Coultrup again complained to management about Dean Zimmerman, his sexual harassment, and her hostile work environment. The University took no action.

24. As a direct and proximate cause of the sexual harassment and hostile work environment, Coultrup was emotionally and physically exhausted and developed clinical depression. Coultrup took sick leave beginning on January 31, 2008. After using her prescribed four weeks of annual sick leave as afforded by the University Faculty Manual, she formally put in a Family Medical Leave Act (hereinafter "FMLA") request on March 10, 2008. In compliance with University policy, Coultrup submitted a physician's evaluation which ordered she take a medical leave of absence from the University for 12-16 weeks.

25. As early as March 12, 2008, the University was advertising on its website for Coultrup's job despite the fact her FMLA request was in process. The University had not informed Coultrup verbally or in writing that her contract was not being renewed.

26. Coultrup never abandoned her job and made arrangements to have her responsibilities covered in her absence.

27. On or about May 23, 2008, Coultrup timely filed a charge of discrimination with the EEOC in which she alleged that she had been discriminated against by defendants through sexual harassment by Dean Zimmerman and retaliated against for opposing Dean Zimmerman's improper and illegal actions. The Charge Number of this charge, attached hereto as Exhibit C and incorporated herein by reference, is 433-2008-05606.

28. Coultrup, by and through counsel, requested her 2008-2009 employment contract from the University's counsel on July 11, 2008. After receiving no response, counsel again requested Coultrup's employment contract on July 16 and on July 21, 2008.

7

29.     In a return letter from the University's counsel dated July 24, 2008, Coultrup was informed for the first time that the University would not be offering her a contract for 2008-2009 year.

30.     The University Faculty Manual required that the University notify Coultrup regarding her 2008-2009 contract by December 1, 2007. This did not occur.

31.     Due to the University's lack of written notification in a timely manner, Coultrup both anticipated and expected her contract to be renewed as soon as she was medically released to return to work.

32.     The July 24, 2008 letter from the University alleged Coultrup abandoned her job and failed to perform her responsibilities. This letter was the first instance of such assertions and claims being made against Coultrup. The letter alleged Coultrup "abandoned" her job by "failing to teach her classes after January 30, 2008 without any request for or approval of a leave of absence".

33.     Coultrup did not abandon her position at Methodist University. Coultrup followed all appropriate procedures in requesting medical leave according to the University Faculty Manual and ensured her responsibilities were met.

34.     Coultrup took proper action to ensure that her exams were proctored in December 2007, she made arrangements to have her fall grades submitted as agreed between the parties, and she had obtained pre-approval to miss the fall graduation due to a PhD requirement in Baltimore, MD.

35.     All of Coultrup's students who had completed the required coursework did receive their grades on-time as agreed between the parties. The only students who had to wait for their grades were those students who had not yet completed the required coursework. None

8

of these issues were raised as grounds for termination until after the filing of a charge of discrimination with the EEOC.

36.     Coultrup was paid a full salary by the university during the months between January 2008 and August 2008, a time period when defendant University claims Coultrup had abandoned her job.

37.     On or about October 8, 2008, plaintiff timely filed a second charge with the EEOC in which she alleged that her contract with the defendant University had not been renewed in retaliation for her filing an EEOC Charge of Discrimination in May 2008.  The Charge Number of this charge, attached hereto as Exhibit D and incorporated herein by reference, is 433-2008-06714..

38.     On March 20, 2009, the EEOC issued plaintiff a Notice of Right to Sue with respect to her charge of discrimination based on retaliation and sex filed on May 23, 2008 and numbered 433-2008-05606.  On March 20, 2009, the EEOC also issued plaintiff a Notice of Right to Sue with respect to her charge of discrimination based on retaliation filed on October 8, 2008 and numbered 433-2008-06714.  Plaintiff has complied with all procedural and administrative prerequisites prior to filing this suit.

V. FIRST CLAIM FOR RELIEF
(Title VII – Hostile Work Environment; Sexual Harassment)

39.     Plaintiff realleges and incorporates the foregoing paragraphs as if fully restated herein.

40.     Title VII makes it unlawful to discharge or otherwise discriminate against an individual based upon such individual's gender.  Title VII also prohibits sexual harassment as a form of unlawful sex discrimination.

9

41.     While employed by the defendant University, the plaintiff was subjected to conduct of a sexual nature because of her sex by defendant Dean Zimmerman. Such conduct was unwelcome to the plaintiff and the conduct was sufficiently severe and pervasive to unreasonably interfere with the plaintiff's work performance. The conduct created an intimidating, hostile, and offensive work environment. Defendant University failed to prevent or correct harassing conduct after plaintiff reported it to the Vice President for Academic Affairs, an official in a position to take appropriate action. As a result, defendant University on its own and acting by and through defendant Dean Zimmerman, who was plaintiff's supervisor, created, allowed, and acquiesced in such conduct and hostile environment, and thus is responsible under Title VII. All knowledge of such conduct by defendant Dean Zimmerman is imputed to defendant University as a matter of law. Defendant University knew or should have known of the harassment and failed to take prompt action to stop the harassment.

42.     As a direct and proximate result of the defendant University's unwelcome conduct based upon plaintiff's gender, sufficiently severe and persuasive as to unreasonably interfere with plaintiff's employment and work performance and to create an intimidating and hostile work environment, the plaintiff has been damaged in an amount in excess of $75,000.00.

## VI. SECOND CLAIM FOR RELIEF
(Title VII – Retaliation; Adverse Employment Action)

43.     Plaintiff realleges and incorporates the foregoing paragraphs as if fully restated herein.

44.     Title VII makes it unlawful to retaliate against an employee for filing a Charge of Discrimination with the EEOC, a protected activity under the Civil Rights Act.

10

45.     During plaintiff's employment, she notified defendant University and defendant Dean Zimmerman of their unlawful and discriminatory employment practices and opposed such practices. As a direct and proximate result of her opposition to such unlawful and discriminatory employment practices and her filing of a charge of discrimination with the EEOC, plaintiff suffered adverse employment actions. Specifically, the plaintiff felt compelled to resign as Director of the Professional MBA at Pinehurst. Furthermore, plaintiff was denied a promotion and the plaintiff's employment contract was not renewed without just cause or reason. At the time the plaintiff made such complaints, she had a reasonable belief that the practice and conduct of the defendants as set forth herein constituted discrimination and harassment under Title VII. The plaintiff's contract would have been renewed but for the plaintiff exercising her rights under Title VII and other applicable laws and statutes set forth herein.

46.     As a direct and proximate result of the defendants' retaliation against the plaintiff, the plaintiff has been denied a promotion, has lost her job, including all benefits of employment, has been impeded in finding new employment in academia, and has been damaged in an amount in excess of $75,000.00.

## VII. THIRD CLAIM FOR RELIEF
(Sex Discrimination – State Law)

47.     Plaintiff realleges and incorporates the foregoing paragraphs as if fully restated herein.

48.     It is the public policy of the State of North Carolina that no employer shall discriminate against any employee on the basis of gender (N.C. Gen. Stat. §143-422.2). In discriminating against the plaintiff, specifically by failing to allow plaintiff to hold employment without discrimination and denying employment opportunity to plaintiff based on retaliatory

11

discrimination, the defendants violated the North Carolina Equal Employment Practice Act, which represents the public policy of the State of North Carolina.

49.     Such conduct on the part of the defendants constitutes sex discrimination under North Carolina law for which the plaintiff is entitled to recover damages.

50.     As a direct and proximate result of the defendants' sex discrimination under state law, the plaintiff has incurred damages in excess of $75,000.00.

## VIII. FOURTH CLAIM FOR RELIEF
(Intentional Infliction of Emotional Distress – State Law)

51.     Plaintiff realleges and incorporates the foregoing paragraphs as if fully restated herein.

52.     Defendants have discriminated against plaintiff on the basis of her sex, which discrimination took the form of sexual harassment and retaliation in violation of Title VII, by subjecting her to a hostile work environment.  Defendants maliciously and wantonly harassed, intimidated and humiliated plaintiff, and maliciously and wantonly failed to promote and did not renew plaintiff's employment after plaintiff complained that defendants failed to rectify such discrimination in its workplace.

53.     Defendants' actions have placed plaintiff under severe stress, causing her to suffer several emotional distress and economic harm, as a result of which she is entitled to compensatory damages in an amount in excess of Seventy-Five Thousand ($75,000) Dollars. Defendants' conduct as alleged above also entitles plaintiff to punitive damages in an amount in excess of Seventy-Five Thousand ($75,000) Dollars.

12

54.     In the alternative, plaintiff claims negligent infliction of emotional distress against defendant University for negligently failing to address the illegal conduct of Defendant Dean Zimmerman after it had been given notice of such conduct.

## IX. FIFTH CLAIM FOR RELIEF
(Assault and Battery – State Law)

55.     Plaintiff realleges and incorporates the foregoing paragraphs as if fully restated herein.

56.     The conduct of defendant Dean Zimmerman as set forth herein, within the course and scope of employment, constitutes assault and battery under the laws of North Carolina.  Said conduct was not addressed by defendant University after having received notice.  Therefore said conduct was ratified by the defendant University.

57.     As a direct and proximate result of defendant Dean Zimmerman's battery of plaintiff, in the form of offensive touching and groping, while defendant Moore was acting within the course and scope of his employment, conduct which the University ignored and effectively ratified, the plaintiff suffered injury and damages.

## X. DEMAND FOR TRIAL BY JURY

58.     Plaintiff hereby requests a jury trial with respect to her above-stated claims for relief.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court:

1.      Declare the actions complained of herein illegal, and issue an injunction enjoining defendants from continuing employment practices based upon sexual harassment and retaliation; and

13

2.     Award to plaintiff reinstatement with University and her respective lost earnings, including all fringe benefits, to which she is entitled, along with interest thereon;

4.     Award to plaintiff her respective costs, expenses and reasonable attorney's fees; and

5.     Award to plaintiff compensatory in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars and punitive damages in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars ; and

6.     Grant such other and further relief as may be just and necessary to grant complete relief to plaintiff, including retention of jurisdiction of this action, pending complete implementation of the relief ordered.

14

This the 16 day of June, 2009.

BY: _____
Thomas M. Van Camp
Attorney for the Plaintiff
Van Camp, Meacham, & Newman, P.L.L.C.
Post Office Box 1389
Pinehurst, NC 28370
thomasv@vancamplaw.com
(910) 295-2525
Fax (910) 295-2001
N.C. State Bar No. 16872

15